IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                                          **Civ. No.**

$25,590.00 IN UNITED STATES CURRENCY,

    *Defendant-in-rem.*

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of the Controlled Substances Act that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

### DEFENDANT *IN REM*

2. The defendant *in rem* consists of the following:

    i. Twenty five thousand five hundred ninety dollars ($25,590) in United States Currency,
    (hereafter referred to as "Defendant Currency").

3. The Defendant Currency was seized by the Department of Homeland Security, Homeland Security Investigations ("HSI") on September 6, 2020, in the District of New Mexico.

4. The Defendant Currency is now, and during the pendency of this action will be, in the jurisdiction of this Court.

## JURISDICTION AND VENUE

5.     The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6.     Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district. Upon the filing of this complaint, the Defendant Currency will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

7.     On August 6, 2020 around 12:59p.m., Homeland Security (HSI) Task Force Officer (TFO) Calvin Brown assigned to the New Mexico State Police (NMSP) conducted a vehicle traffic stop of a vehicle for following too closely to a tractor trailer on Interstate 40 West in McKinley County, New Mexico. TFO Brown made contact with the driver and sole occupant, Elvis Shumpert. TFO Brown informed Shumpert the reason for the stop and requested Shumpert to exit the vehicle.

8.     Shumpert provided his license and a rental contract for the vehicle, a blue minivan with a Pennsylvania license plate. TFO Brown observed numerous cell phones on the middle console and a radar detector attached to the front windshield. As part of the stop, TFO Brown ran a warrants search and spoke with Shumpert about his travels.

9.     During that conversation, Shumpert, a resident of St. Peters, Missouri, initially claimed to have been traveling to Arizona to visit a hospitalized aunt. (Later he changed his narrative to say that he was going to visit a different family member.) Claims of hospital visitation were suspicious, as due to the COVID-19 pandemic, hospital visitations by an

2

interstate traveler were unlikely to be permitted. Additionally, when questioned Shumpert did not know the name of the hospital to which he claimed he was traveling.

10. TFO Brown ultimately issued a warning citation to Shumpert for failing to follow at an appropriate distance. TFO Brown released Shumpert by telling him that he was "good to go" following signing the citation. However, during the entire encounter with Shumpert, TFO Brown noticed that Shumpert was visibly shaking and becoming increasingly nervous (although nervousness typically subsides over time with usual drivers) which raised TFO Brown's suspicion of Shumpert as Shumpert also gave incompatible answers to basic questions.

11. As Shumpert began walking back to his vehicle, after being released from the initial conversation and citation, TFO Brown called out to Mr. Shumpert, who returned to the police vehicle without direction. TFO Brown asked for Shumpert's permission to ask additional questions – Shumpert agreed to the encounter.

12. TFO Brown continued to speak with Shumpert about his travel plans, possible illegal substances in the vehicle, and whether Shumpert possessed any large amounts of money in the vehicle. During the conversation, Shumpert also told TFO Brown that he worked as an auto salesman. When asked about whether he was transporting large sums of money, Shumpert stated that he did have money in the vehicle and that it was for an auction he was going to attend. This statement was incongruent with his previous statements regarding the reasons given for his travel (visiting a hospitalized family member). When asked about the amount of the currency, Shumpert responded that he did not know. After hearing these new contradictory answers and speaking with Shumpert generally, TFO Brown suspected that Shumpert was offering fabricated cover stories to justify his travel.

13. Based on Shumpert's unusual nervousness that did not subside as expected, inconsistent answers to basic questions, and on his law enforcement experience regarding the use of cover stories, TFO Brown requested permission to search the vehicle; Shumpert denied consent for the search.

14. After the denial, TFO Brown conducted an open air sniff of the vehicle with his drug detection canine, Kimba, which resulted in a positive canine alert which indicated to TFO Brown that narcotics or narcotics residue would likely be found in the vehicle. After the positive sniff result, a subsequent search of the vehicle revealed three clear plastic containers with blue lids containing U.S. currency concealed in tin foil and wrapped in rubber bands. The containers were found in a black pack inside the vehicle.

15. Based on TFO Brown's training and past experiences, the packaging of the U.S. currency was consistent with the methods used by illicit money couriers when transporting U.S. currency. When TFO Brown asked Shumpert about the amount of the currency again, this time Shumpert stated "26" which TFO Brown believed to be describing twenty-six thousand dollars. (The total of the currency ultimately seized was $25,590.) When asked why he was carrying money packaged in that manner, Shumpert muttered something incoherent.

16. Further search of the vehicle revealed four and a half Xanax pills within a prescription bottle with an illegible prescription on the bottle and two pieces of unknown and unidentified pills. Shumpert did not provide a valid prescription for the pills and did not explain what the unidentified pills were. TFO Brown knew from his law enforcement experience that Xanax and other mood-altering drugs are often employed by illicit currency couriers to help them remain calm while involved in these illicit activities.

17. Based on all of the evidence available to TFO Brown and TFO Brown's law enforcement experience, TFO Brown contacted HSI Special Agents, one of whom (HSI Special Agent Kevin Rinehart) spoke with Shumpert on the telephone before advising TFO Brown to seize the currency.

18. Shumpert continued to change his narrative during this telephone conversation.

19. When questioned by Special Agent Rinehart, Shumpert claimed that all the money was his (although at other times, he attributed some of the currency to other owners). Shumpert stated that he was carrying exactly $26,000 in $100 and $20 bills stemming from 10 withdrawals of $2000 per day over a period of 10 days. However, the arithmetic of this claim did not account for the total of the currency. Later, Shumpert stated that he only made five withdrawals of $2000 and sold a 2006 Mercedes Benz for $13,000 to generate the currency. However, this different claim also did not arithmetically account for the total of the currency.

20. Additionally, Shumpert claimed that he was going to use the currency to purchase vehicles, but he was unable to explain how he could transport the vehicles back to St. Louis since he was traveling alone. He also could not describe how much money he made in the year prior to the stop. Additionally, when asked if he had any criminal history, Shumpert claimed that he only had an assault charge, and no narcotics offenses. However, a criminal history search determined that Shumpert had a lengthy criminal history with multiple narcotics charges.

21. Shumpert's initial statements regarding how he procured the money varied significantly and were ultimately contradictory to his submitted claim for the $25,590.

22. Following the seizure, Shumpert submitted additional materials to HSI, in which he claimed that the cash seized was in the amount of $26,000 and provided the following breakdown of how he received the cash: (1) $13,000 from the sale of a 2006 Mercedes CLS55

AMG; (2) $8,000 from unemployment benefits; and (3) $5,000 from his employer to purchase cars at auction. Shumpert also included a letter from Global Auto Plex stating that it purchased a 2012 Buick LaCrosse from Shumpert on March 20, 2020 for $6,500.

23. Additionally, Shumpert provided a bill of sale for a 2006 Mercedes CLS55 for $13,000. However, the Bill of Sale appears to note that the seller was Global Auto Plex.

24. The fragments of additional documentation submitted by Shumpert, while evidencing some income, are not comprehensive or sufficient to corroborate the shifting sources of income (and sources of the Defendant currency) previously identified by Shumpert. There are significant discrepancies within the supporting documentation that are inconsistent with Shumpert's prior claims. This inconsistent material, provided by Mr. Shumpert after several days and with access to his records, case further doubt upon Mr. Shumpert's claims. These ongoing inconsistencies are further evidence that the Defendant currency was not gained by Shumpert through legal means but instead is more consistent with financial gains from illicit activities such as drug trafficking.

## FIRST CLAIM FOR RELIEF

25. The United States incorporates by reference the allegations in paragraphs 1 through 24 as though fully set forth.

26. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

27. Defendant Currency was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*/s/ Brandon L. Fyffe (signed electronically)*
BRANDON L. FYFFE
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Homeland Security Service who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 12/28/2020

_____
Kevin Rinehart, Special Agent
Homeland Security Service

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$25,590 IN U.S. CURRENCY,

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question *(U.S. Government Not a Party)*
[ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [X] 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 400 State Reapportionment |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | 410 Antitrust |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | 430 Banks and Banking |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability | | 820 Copyrights | 450 Commerce |
| 151 Medicare Act | 340 Marine | | 830 Patent | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability / **PERSONAL PROPERTY** | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / 370 Other Fraud | | **LABOR** / **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | | 710 Fair Labor Standards Act / 861 HIA (1395ff) | 490 Cable/Sat TV |
| 190 Other Contract | 360 Other Personal Injury / 380 Other Personal Property Damage | | 720 Labor/Management Relations / 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | 362 Personal Injury – Medical Malpractice / 385 Property Damage Product Liability | | 740 Railway Labor Act / 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | | | 751 Family and Medical Leave Act / 864 SSID Title XVI | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | 790 Other Labor Litigation / 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 440 Other Civil Rights / **Habeas Corpus:** | | 791 Employee Retirement Income Security Act | 895 Freedom of Information Act |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee | | | 896 Arbitration |
| 230 Rent Lease & Ejectment | 442 Employment / 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 443 Housing/ Accommodations / 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment / 535 Death Penalty | | 871 IRS—Third Party 26 USC 7609 | |
| 290 All Other Real Property | | | **IMMIGRATION** | |
| | 446 Amer. w/Disabilities - Other / **Other:** 540 Mandamus & Other | | 462 Naturalization Application | |
| | 448 Education / 550 Civil Rights | | 465 Other Immigration Actions | |
| | / 555 Prison Condition | | | |
| | / 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)(6)

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 12/22/2020
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____